RODNEY C. AUSTIN, PETITIONER
*vs.*
STATE OF MAINE

Knox. Opinion, July 27, 1964.

*Edward J. Berman,* for Plaintiff.

*John W. Benoit, Asst. Atty Gen.,*
*Jerome Matus, Asst. Atty. Gen.,* for State.

SITTING: WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ. WILLIAMSON, C. J., did not sit.

MARDEN, J. On writ of error. Upon a ten count indictment (No. 1106) returned to the Superior Court in and for Lincoln County in November, 1959, petitioner was charged with kidnapping in counts 1 through 3, associated offenses not here pertinent in counts 4 through 9, and an allegation of previous conviction and State Prison sentence in count 10. Upon trial, at which petitioner was represented by court appointed counsel, he was found guilty on all counts except 7 (crime against nature) and sentenced to a mandatory life imprisonment.

Upon writ of error, in which he claimed that he was illegally sentenced, which writ was dismissed and petitioner

filed exceptions, this court considered the case and overruled the exceptions as reported in *Austin* v. *State of Maine*, 158 Me. 292, 183 A. (2nd) 515 (opinion filed August 6, 1962).

The petitioner's current writ of error was filed April 17, 1963, alleging that he is undergoing a life sentence upon conviction under a defective indictment. Upon finding of indigency, counsel was appointed, and the single justice to whom the petition was addressed, with agreement of petitioner's counsel, reported the case to this court upon the record, briefs filed in the reported case (158 Me. 292), and stipulation of the issues:

"1. Whether the indictment numbered 1106 * * * as set forth in counts 1, 2 or 3 of said indictment, sufficiently sets forth the crime of kidnapping as defined in Chapter 130, Section 14 Revised Statutes of Maine upon which a sentence of imprisonment for life could be imposed.

"2. Whether or not said issue as set forth above has been adjudicated by this court in its decision of State v. Austin reported in 158 Me. 292."

Considering first the second issue, it is agreed that the point raised in 1. above was not raised, briefed, argued or discussed in the reported case, and were it to be held that the question now raised were *res judicata* it could be so held only under the principle that a prior judgment between the same parties is conclusive "not only as to matters which were tried in the first action but as to all matters which might have been tried." *Pillsbury* v. *Kesslen Shoe Company*, 136 Me. 235, 237; 7 A. (2nd) 898. While it is clear that the present issue No. 1. could well have been presented in the reported case, and therefore could now be considered as having been adjudicated, we feel justified in giving it our attention for two reasons.

Firstly, the writ of error culminating in the proceeding before us was sworn to by the petitioner on April 16, 1963

and while its date of entry with a single justice of this court is not indicated, the State's answer was filed September 10, 1963, which antedates the operation of the statute granting special post-conviction habeas corpus (P. L., 1963, Chapter 310, effective September 21, 1963, now a part of Chapter 126, R. S.) "provided that the alleged error has not been previously or finally adjudicated or waived in the proceeding resulting in the conviction or in any other proceeding that the petitioner has taken to secure relief from his conviction."

Secondly, the issue now raised involves a matter of statutory interpretation unusually important to the administration of criminal law in the field with which it deals.

The question to be here answered is whether the 1935 amendment to our kidnapping law[1] makes "ransom or reward"[2] a necessary element of all courses of conduct which are violations of the reference statute. Petitioner contends that it does, and that the three counts of the indictment alleging kidnapping and on which he was convicted, absent the allegation of "ransom or reward" did not charge him with a crime.[3]

---

[1] "Whoever unlawfully confines or imprisons another, or forcibly transports or carries him out of the state or from place to place within it, or so seizes, conveys, inveigles or kidnaps any person, by any means whatever and holds him for ransom or reward, shall be punished by imprisonment for life. * * *." R. S., 1954, Chap. 130, § 14.

[2] "Ransom or reward," — not necessarily synonymous. See *Gooch* v. *United States*, 56 S. Ct. 395.

[3] Count 1, omitting formal parts, a charge that on October 17, 1959 the petitioner on one S * * * feloniously did make an assault upon her, the said S "then and there feloniously and unlawully did confine and imprison for the space of 6 days, against the peace of the state, * * *."

Count 2, charged that the petitioner "did forcibly transport and carry from Nobleboro in said County of Lincoln to Jefferson in said County of Lincoln" said S * * * against the peace of the state, etc.

Count 3, charged that the petitioner, "did forcibly transport and carry out of the State of Maine" said S * * * against the peace of the state, etc.

If ambiguity exists, and the controversy here suggests that it does, we may properly examine the history of the statute. *Jenness* v. *State*, 144 Me. 40, 46, 64 A. (2nd) 184; 50 Am. Jur., Statutes § 294.

The development of the offense now defined as kidnapping began in antiquity. It was a capital offense under the Hebraic law. Exod. XXI, 16. It was described by Hawkins as an aggravated form of false imprisonment. I Hawk. P. C. 119 (Curwood Ed.). At a later period Blackstone describes it as the "forcible abduction or stealing away of a man, woman, or child from their own country and sending them into another." Book the Fourth Blk. Comm. 219 (Book 4 Lewis's Edition, 1898, p. 1614).

It has long been recognized as a common law offense in this country. See *State* v. *Rollins*, 8 N. H. 550 (1837).

> "But interest in common law kidnapping is now only historical, because in all jurisdictions of this country kidnapping is now punished by statute, and these statutes have progressively extended the scope of the offense." Burdick, The Law of Crime, § 387, 1946 Ed.

See also Wharton's Criminal Law, 12th Ed., Vol. I, § 773.

"The elements of the crime necessarily are dependent upon the wording of the statute in the particular state under consideration * * *." *State* v. *Croatt*, 34 N. W. (2nd) 716, [1] 719.

Our State has from its beginning made kidnapping a statutory offense, R. S., 1820-1821, Chapter 22, § 1.[4] The offending conduct, simply stated, then was confined to

---

[4] "Sect. 1. * * * , That if any person shall transport or carry, or cause to be transported or carried, any subject of this State, or other person lawfully residing and inhabiting therein, to any part or place without the limits of the same, * * * without his consent or voluntary agreement; or in order to remove such person from one part of the State to another part of the same, * * * ; every person so offending, * * * shall be punished * * *."

transportation of a Maine subject against his will (a) out of the State, or (b) from place to place within it.

In 1838 (P. L., 1838, Chapter 323) [5] the element of forcible or secret confinement was added, and intra-state movement seemingly deleted.

The first revisions of our Maine statutes, identified as the 1841 (R. S., 1841, Chapter 154, Section 20) [6] and 1857 (R. S., 1857 Chapter 118, Section 19) [7] revisions, returned the intra-state element and otherwise only refined the previous definitions.

As of the 1857 revision with its obviously disjunctive clauses, a charge of kidnapping could be founded upon any one of six courses of conduct ("acts") viz.:

1.  Unlawful confinement (imprisonment) of another.

2.  Forcible transportation of another out of the State.

---

[5] "Section 1. Be it enacted * * *, That every person, who, without lawful authority, shall forcibly or secretly confine or imprison any other person, within this State, against his will, or shall forcibly carry or send such person out of this State, or shall forcibly seize and confine, or shall inveigle or kidnap any other person with intent either to cause such person to be secretly confined or imprisoned in this State against his will, or to cause such person to be sent out of the State against his will, or to be sold as a slave, or in any way held to service against his will; and every person, who shall sell, or in any manner transfer, for any term, the service or labor of any * * * person of color, who shall have been unlawfully seized, taken, inveigled or kidnapped from this State to any other State, * * * shall be punished * * *."

[6] "Sect. 20. Whoever, without lawful authority, shall confine or imprison any person in this state against his will, or shall forcibly transport or carry any person out of the state, or from one place to another place within the state, without his consent, or shall forcibly seize, inveigle, convey or kidnap any person, with intent to cause such person to be so confined or imprisoned, or so transported or carried against his will and consent, or shall sell as a slave, etc. * * * shall be punished * * *."

[7] "Sec. 19. Whoever unlawfully confines or imprisons another, or forcibly transports or carries him out of the state, or from place to place within it, or so seizes, conveys, inveigles, or kidnaps any person with intent to cause him to be so dealt with; or sells as a slave, etc., * * * shall be punished * * *."

3. Forcible transportation of another from place to place within the State.

4. Seizure, etc., of another with intent to confine, or transport within or without the State.

5. Sale as a slave of any person of color who had been so seized, etc.

6. Transfer, for any term of time, the service of any person of color who had been so seized, etc.

> "Sometimes, the word 'or' is used in a statute preceding a phrase or clause which is inserted to define that which precedes the word. In its elementary sense, however, the word 'or' as used in a statute, is a disjunctive particle indicating an alternative. It often connects a series of words or propositions, presenting a choice of either. If the disjunctive conjunction 'or' is used, the various members of the sentence are to be taken separately." 50 Am. Jur., Statutes § 281.

To the same sense 82 C. J. S., Statutes § 335 including the principle that: *"In penal statutes, the word 'or' is seldom used other than as a disjunctive, * * *."* More specifically,

> "(w)here a statute prohibiting abduction or kidnapping sets forth several specific purposes in the disjunctive, any one of them is sufficient to taint the act with criminality, and the "ejusdem generis' rule of statutory construction is not generally applied so as to narrow the criminality of abduction or kidnapping." 1 Am. Jur., Abduction and Kidnapping § 21.

In *State* v. *Dumais,* 137 Me. 95, 15 A. (2nd) 289, where the interpretation of a statute prohibiting any named officer from accepting a bribe in connection with "any matter pending, or that may come legally before him in his official capacity" was before the court, the disjunctive phrasing was in issue and the court said:

"The word 'or' in this connection is disjunctive. The corrupt act may occur when a matter is pending, or instead, it may be with reference to a matter that may come legally before him. The State is not limited to proof that the matter is then pending. It may allege and prove the alternative, * * *." (p. 98)

As to this element of statutory construction, see also *Commonwealth ex rel Shumaker* v. *New York and Pennsylvania Co.*, 79 A. (2nd) 439 [15, 16] 448 (Pa. 1951); *State ex rel Normile* v. *Cooney*, 47 P. (2nd) 637 [3-5] 641 (Mont. 1935); and *Chicago Catholic Workers Credit Union* v. *Rosenberg*, 104 N. E. (2nd) 568 [1-3] 571 (Ill. 1952).

Our statutory rules of construction (Chapter 10, Section 22 subparagraph I) leads us to no different conclusion and *State* v. *Michaud*, 150 Me. 479, 114 A. (2nd) 352, cited by petitioner as supporting his contention that the word "or" in the present statute should be read as "and," whereby the "ransom or reward" element applies to the several courses of conduct prohibited by the statute, is not on point.

The statute in *Michaud*[8] "was evidently taken," says the court, from a Federal statute which read " * * * conceals *and* does not * * * disclose." Our court reasoned that inasmuch as "concealment" and "non-disclosure" are not synonymous, and the Maine statute was patterned after the reference Federal act, the word "or" could not be read as "preceding a phrase which is inserted to define that which precedes the word" (see quote ante from 50 Am. Jur., Statutes § 281) and must be read in the conjunctive. That reasoning is not here applicable. Maine statutorily defined kidnapping over one hundred years before the Congress spoke on the subject. (See post)

---

8 "Whoever, having knowledge of the actual commission of a felony * * * conceals or does not as soon as possible disclose and make known the same * * * shall be punished * * *."

The law of 1857 remained without change until 1935. In the meantime the kidnapping of the Lindbergh child had occurred on March 1, 1932, an indictment in that case had been returned on October 8, 1934 and with trial underway in January 1935 (*State* v. *Hauptmann* (N. J. 1935) 180 A. 809), it is fair to infer that our 87th Legislature, convening at that time, shared concern with other legislative bodies[9] whereby "kidnapping laws were generally revised, and more severe penalties, including that of death in a number of states, were imposed, particularly in cases where the kidnapping is committed for the purpose of holding one for ransom or extortion." Burdick, *supra*, § 388 and citations. Of this historical and notorious case we take notice. Answers of the Justices, 70 Me. 600, 609.

In 1935 (P. L. 1935, Chapter 39) our statute on kidnapping was amended in the respects now indicated:

> "Whoever unlawfully confines or imprisons another or forcibly transports or carries him out of the state, or from place to place within it, or so seizes, conveys, inveigles, or kidnaps any person, ~~with intent to cause him to be so dealt with~~; **by any means whatever and holds him for ransom or reward,** ~~or sells as a slave, or transfers, for any term of time, the service of any person of color, who has been so seized, inveigled, or kidnapped,~~ shall be punished ~~by a fine of not more than one thousand dollars, or by imprisonment for not more than twenty years~~ **by imprisonment for life.** * * * "[10]

In the light of the contention now made, it is to be noted that the element of "ransom or reward" until 1935 was never a part of the offense in Maine.

With this amendment "acts" 1), 2) and 3) listed above are unchanged; "acts" 4), 5) and 6), listed above, no longer

---

[9] The Congress in 1932 enacted for the first time a kidnapping statute, now appearing in U. S. Code, Title 18, Chapter 55, §§ 1201, 1202.

[10] Words stricken, deleted; words underlined, added.

support a charge of kidnapping and new "acts," — the seizure, conveyance, inveiglement or kidnapping of another by any means whatever and holding for ransom or reward, became proscribed by the law. The maximum penalty was increased from $1000 fine to 20 years, to imprisonment for life, and conspiracy to kidnap, with maximum punishment for any term of years, was added to the statute. The purpose was not to narrow but to broaden the scope of the law, and emphasize by penalty its intentional and vicious encroachment upon personal liberty.

The construction which petition urges would make unlawful imprisonment or forcible transport without the state or forcible transport from place to place within the state, — all pre-1935 acts of kidnapping, the crime of kidnapping only if each were done for the purpose of ransom or reward. The legislature had no such intent. The 1935 amendment did not make "ransom or reward" an element of all courses of conduct characterized as kidnapping.

Counts 1, 2, and 3 of indictment No. 1106 adequately and completely charged the petitioner with distinct and separate acts of kidnapping on which, severally, the jury found guilt. Upon such conviction the trial court had no discretion on sentence. If there be categories of conduct prohibited within the letter of the statute and for which the sentence of imprisonment for life manifestly be inordinate, the remedy is legislative and not judicial. See *People* v. *Tanner*, 44 P. (2nd) 324 [9-12] 333 (Cal. 1935).

*Writ of error dismissed.*

*Conviction and sentence affirmed.*